Garner & Nevill v. Johnson.

---

## GARNER & NEVILL *vs.* JOHNSON.

1. Under the acts of 1833 (Clay's Digest 54 § 1,) and 1845 (Pamphlet acts 1844-5 137,) the clerk of the court may issue a judicial attachment against the defendant who avoids the service of process, upon the filing of the required affidavit, either in vacation or term time.

   (Chilton C. J. *dissenting, held,* that an order of the court or judge was necessary to warrant the issue of the attachment.)

2. A plea in abatement for a defect in the writ must set it out on oyer, so that the court may judge whether the objection is sustained by it.

3. When a judicial attachment is sued out against a defendant who avoids the service of process, he cannot by plea put in issue the grounds on which it issued as contained in the affidavit.

4. Duplicity in a plea in abatement is fatal on general demurrer.

5. The general rule is, that when a statute requires service for a fixed number of days, the mode of computation is, to include the day of service, and to ex-

clude the other; but when it requires a number of entire days, both must be excluded.

6. A writ issued on Wednesday is properly returnable to a term of the court commencing on the following Monday.

ERROR to the Circuit Court of Pickens.

Tried before the Hon. B. W. HUNTINGTON.

The plaintiffs in error, who were also plaintiffs in the court below, sued out their writ of *capias ad respondendum* in assumpsit, on the 15th day of October, 1851, against Johnson, returnable to the Circuit Court of Pickens, which commenced its session on the 20th of the same month. This writ was received and returned by the sheriff of Pickens, on the same day it issued, with his endorsement: "Defendant not found in my county, Octo. 15th, 1851: (Signed) B. G. McAllister, sh'ff." During the term of the court to which the writ was returnable, Garner, one of the plaintiffs, made affidavit before the clerk, that he had reason to believe that Johnson, the defendant, avoided the process. Thereupon the clerk issued an attachment, setting forth the writ and return, with the affidavit, and commanding, &c., that so much of the estate of Johnson should be attached as would satisfy the debt and costs, to be retained subject to further proceedings to be had thereon, at the next term of the Circuit Court of Pickens, so as to compel Johnson to appear and answer the plaintiffs' complaint.

This attachment issued the 25th October, 1851; was placed in the hands of the sheriff of Pickens on the same day, and was levied on three negro slaves of Johnson, and returned on the 27th of that month.

At the Spring term, 1852, Johnson appeared, and filed the following pleas:

1. Craves oyer of the affidavit made by Garner; which being set out, he prays judgment that the writ of attachment may be quashed, because the affidavit fails to state that Johnson was a resident of the State of Alabama at the time the writ of *capias ad respondendum* was issued, as required by the statute in such case provided.

2. The second plea, after setting out the affidavit on oyer, avers, that it fails to state that the defendant was a resident of the State of Alabama on the 15th of October, 1851, the time

when the *capias ad respondendum* issued, as required by law; wherefore he prays that the judicial attachment issued upon the affidavit be quashed.

3. The third plea avers, that no affidavit was made by any one that Johnson, the defendant, was, on the day the *capias ad respondendum* issued, a resident of the State, as required by the statute in such case provided; wherefore he prayed judgment that the judicial attachment be quashed.

4. The fourth plea prays judgment that the writ be quashed, because it was issued by the clerk of the court, while the said court was in session, and without any order from the court, as required by the statute.

5. The fifth plea prays judgment of the attachment, because the writ of *capias ad respondendum* was issued on the 15th, and returnable on the 20th October; and that five entire days did not intervene, as required by the statute.

6. By the sixth plea, the defendant prays judgment of the writ, &c., because said Garner did not have reason to believe, at the time he made the affidavit, that defendant avoided the service of the writ of *capias ad respondendum*, and avers that he did not in fact avoid it.

7. The seventh plea avers, that defendant did not avoid the service of said writ, and prays judgment of the attachment.

8. The eighth plea sets out the writ of attachment on oyer, and avers that the writ of *capias ad respondendum* was not issued five entire days before the day on which it was returnable, as required by the statute; wherefore the defendant prays judgment that the said attachment be quashed.

All these pleas were duly verified by the oath of Johnson. To each of them the plaintiffs demurred. The court sustained the demurrer to the first three, but over-ruled it as to the others; and the plaintiffs having replied to the sixth and seventh, and refusing to plead over as to the fourth and fifth, judgment was rendered quashing the writ of attachment, and adjudging the cost against the plaintiffs.

The over-ruling of the demurrers to the pleas is assigned for error.

BLISS & BALDWIN, for plaintiffs in error:

The fourth plea states that the writ of attachment was

issued in term time by the clerk, without the order of the judge. Clay's Digest 54, § 1; ib. 59, § 17; Pamphlet Acts 1844–5, p. 17.

The fifth plea is, that the *capias* did not issue five entire days before the first day of the term to which it was returnable. 9 Porter 195; 4 Ala. 599.

The sixth plea is bad for duplicity, and for the matter pleaded; and the seventh plea is equally defective in substance. Under the act of 1833, the writ of attachment issued, on the return of "*non est inventus*" by the sheriff, on the mere election of the plaintiff; and it certainly was not competent for the defendant to come in, and plead against the truth of the return, in abatement of the attachment. The act of 1845 required, in addition, that the plaintiff, or some other person specified in the act, should make affidavit that he had reason to believe that the defendant avoided process. This done, it stands where it did before. The attachment issues as a matter of right, and the defendant cannot raise an issue upon the reasons alleged in the affidavit, nor against the return. If the proper return is made, and the plaintiff makes the required affidavit, the attachment issues as a matter of right.

The eighth plea is defective for substance. 1 Greene's (Iowa) Rep. 164; ib. 492; 8 Cowen 260; 3 ib. 19; 10 Wend. 422; 3 Hals. 303; 7 ib. 203; 2 A. K. Marsh. 234; 4 Monroe 464; 7 ib. 530; 1 Mis. 120; 4 Blackf. 329; 5 Gilman 270. It is also bad, because it prays that the writ of attachment may be quashed for an alleged defect in the *capias*.

S. F. HALE, *contra:*

As to the sixth and seventh pleas: The defendant in attachment may traverse the affidavit made for suing out a judicial attachment, by plea in abatement. Brown v. Massey, 3 Stewart's Rep. 226. The authority of this case is doubted, but not over-ruled, in Middlebrook v. Ames, 5 Stewart & Porter 158, as is expressly stated by Justice Saffold, in the latter portion of the opinion of the court. The statute of 1837 applies only to original attachments; Clay's Dig., page 61 § 32.

In Jones v. Donnell, 9 A. R. 697, the court say, that "the distinction pointed at by the statute is, between original and judicial attachments;" meaning, that in the former you cannot, but in the latter you can, traverse the affidavit.

As to the fifth and eighth pleas: A writ issued within five days before the first day of the term to which it is returnable, may be abated on plea of the defendant. Clay's Dig. 334, § 123. In England, the prisoner must be served with a copy of the indictment five days before trial; and this has been uniformly held to mean, five days exclusive of the day of the service and the day of trial. Foster's Crown Law, chap. 3, p. 230. If a note be payable one day after date, and dated on the 5th October, suit cannot be commenced until the 7th. Randolph v. Cook & Ellis, 2 Porter's Rep. 286. In Massachusetts, the defendant in execution is allowed one year, in which to redeem land; and this has been held to mean, an entire year exclusive of the day of sale. Bigelow v. Wilson, 1 Pickering's Rep. 485. Authorities on this head may be conflicting, where the statute requires a thing to be done a given number of days before a certain day; but the language of this act is different; and it is contended that the act is to the same effect as if it required a writ to be issued five entire days before the first day of the term to which it is made returnable. For the statute declares, that, "if a writ is taken out within five days before," &c., it shall be abated on plea. See 2 Denio 164; 2 Hill N. Y. 355; 2 Comstock 446; 1 Douglass (Michigan) 450.

A judicial attachment cannot issue without an order, or fiat of the judge, if issued during term time. All other attachments of this nature require a fiat; as attachments for contempts, attachments out of chancery, &c. It has been the practice to obtain a fiat during term time. The act of the 27th January, 1845, was passed to restrict, not to enlarge the rights of plaintiffs. This is an extraordinary remedy, and not embraced in the statute of 1833, which declares that the attachment laws shall not be rigidly and strictly construed. Here the plaintiff gives no bond, as in original and ancillary attachments. This case itself shows the importance of requiring the plaintiffs to obtain a fiat, so as to guard against the abuse of the process of the courts.

CHILTON, C. J.—It was provided by the act of 1833, (Clay's Dig. 54, § 1,) that "when a writ shall issue from any of the courts of this State, commanding the sheriff, or other

officer, to take the body of any person, to answer any civil action in said court, and the sheriff shall return that the defendant is not found within his county, the plaintiff may, at his election, sue out an attachment against the personal estate of such defendant, or an *alias* or *pluries capias*, returnable in the same manner as original process," &c.

The act of 27th January, 1845, (Pamphlet Acts '44–'45, 137) provides, "that, hereafter, when a writ shall issue from any of the courts of this State, commanding the sheriff, or other officer, to take the body of any person, to answer in any civil suit in said court, and the sheriff or other officer shall make return thereon, that the defendant is not to be found in his county, no judicial attachment shall issue on such return, as matter of right; but before a judicial attachment shall issue, the plaintiff, his agent or attorney, or the sheriff or officer making the return, shall make affidavit before the clerk of the court to which the writ is returnable, that he has reason to believe the defendant avoided the execution of such writ; and on such affidavit being filed, the plaintiff shall be entitled to a judicial attachment, as matter of right."

A majority of the court consider that a proper construction of these acts fully authorizes the clerk to issue the attachment, upon the filing of the required affidavit in vacation, or during the term of the court; that the plaintiff, having shown himself entitled to the writ, by the return of *non est inventus*, and the affidavit that the defendant has avoided the service, as he has reason to believe, may claim its issue as matter of right, by the terms of the act; and that there is no question to be adjudicated by the court, as preliminary to its issue by the clerk. For myself, I am inclined to hold that, being a judicial attachment, it requires the order of the court or judge to warrant it. Such, I know, was the practice before the act of 1845 was passed; and I think that act was not intended to enlarge, but to restrain its issue, as matter of right, to those cases where the party has avoided, or furnished reason to the plaintiff for believing he has avoided, the service of the original writ. I think the judge should make the order for its issue, upon an inspection of the return upon the original writ and of the affidavit. These authorizing it, the order goes as a matter of right. But, as my brethren differ

from me, it results that the fourth plea was insufficient, and that the demurrer to it was improperly overruled.

The fifth plea also is bad. It has been several times decided, that a plea in abatement for a defect in the writ, must set it out on oyer, in order that the court may judge whether the matter of objection urged as ground for abating it, is sustained by the process. See Findley v. Prewitt, 9 Porter's R. 195; Banks v. Lewis, 4 Ala. R. 599. This, the plea before us fails to do, and consequently should not have been sustained.

The sixth plea is bad for two reasons: First, because the defendant could not put in issue the grounds on which the attachment issued, as contained in the affidavit. If the return of *non est inventus* upon the *capias ad respondendum* was duly made, and the required affidavit was filed, the statute, as the result, gives the writ, as matter of right, and fails to provide for contesting this right. To hold that it could be contested in this way, would be, in effect, to destroy the force of the statute, by the introduction of a new provision, as a consequence of such construction. In the second place, it is bad for duplicity; and this, in a plea in abatement, is fatal upon general demurrer. 9 Ala. Rep. 499; 6 ib. 468; 11 ib. 548: 12 ib. 472. In such pleas, matters of form are regarded matter of substance. Elmes v. McKenzie, 5 Ala. Rep. 617; Hart v. Turk, 15 ib. 675. See, also, as to the first objection to it, Middlebrook v. Ames, 5 Stew. & Por. 158.

The seventh plea is liable to the first objection taken to the sixth, inasmuch as it merely denies the fact that the plaintiff had reason to believe that the defendant avoided the service, and falls within the principle settled in the case of Middlebrook v. Ames, *supra.*

The eighth plea is more formal, as it craves oyer of the *capias ad respondendum*, and setting it out, avers, that it was not issued five entire days before the day on which the term to which it was returnable commenced. The statute does not employ the term " entire days," but requires that the writ shall be executed at least five days before the return thereof; and if the writ be sued out within five days before the beginning of the term, it may be abated on plea of the defendant. It is conceded, by the agreement of the counsel accompanying this plea, that the *capias ad respondendum* was issued on

the 15th, and the term commenced on the 20th of October. We should, however, aside from the concession, be bound judicially to know when the court sits.   Now, whatever may be the ruling of other courts, in regard to the point involved in this plea, it has been the uniform practice in this State, so far as we are advised, in computing the time which intervenes between the issue of the writ and the beginning of the term to which it is made returnable, to exclude one day and include the other.   A writ issued and served on Wednesday, which is returnable to a term to commence on Monday, has been uniformly esteemed as well issued and properly returnable. Had the statute said, it shall be issued five entire days before the first day of the term, we are not prepared to say but that the rule would be different.   It seems, however, to be the general rule, that where the statute requires service for a fixed number of days, the mode of computation is to include the day of service and to exclude the other, but where a number of entire days are required, both must be excluded.   3 Hals. 303.   At all events, the practice is too well established in this State, of issuing writs on Wednesday returnable to the court which sits on the Monday following, now to be disturbed, even though we should not be inclined, were the question open, to establish such practice.   See the cases on the brief of plaintiffs' counsel sustaining it.

Our conclusion is, that all the pleas were bad, and that the demurrers should have been sustained to them.

Let the judgment be reversed and the cause remanded.