MARTIN VS. THE FOX AND WISCONSIN IMPROVEMENT CO.

Where the attorneys stipulated that certain papers should constitute the bill of exceptions, and the court ordered accordingly, and these papers were certified up with the record, though not copied and incorporated into a bill of exceptions in form: *Held*, that this must be regarded as a valid bill of exceptions.

Under ch. 98, Gen. Laws of 1853, the Fox & Wisconsin Improvement Company was authorized to take possession of the property, &c., connected with said improvement, and then held by the state, on procuring from persons holding contracts with the state for the construction of such improvement, releases of all demands which they might have or claim to have against the state for damages

resulting from any non-fulfillment of such contracts by the state, &c., and filing such releases with the secretary of state together with bonds to be executed by members of said company, conditioned for the payment by it of all such dam‑ ages, when awarded by the judgment of any court, &c. The company fulfilled these conditions precedent, and took possession under the act in July, 1853. In an action commenced in 1860, by one of said contractors, for damages alleged to have resulted to him prior to July, 1853, from the non-fulfillment by the state of its contract with him, *Held*, that the demand was barred by the statute of limitations, the liability of the company having arisen, if at all, at the time it became entitled to possession of the improvement.

*Held*, further, that resolutions passed by the board of directors of said company in July, 1855—one requesting the chief engineer to report to the board his opinion of the fair and proper terms on which plaintiff's contract should be cancelled, and the other requesting the president and vice-president of the company to ex‑ amine the works under contract with the plaintiff, and ascertain the terms on which the contract should be cancelled, and, in case an agreement could not be reached, to submit the point of disagreement to the board for its action—were not such an acknowledgment of the defendant's liability for the damages claim‑ ed by the plaintiff as to take the case out of the statute.

A claim for services during more than one year as agent and superintendent for a corporation, is not barred in part by the statute of limitations merely because a part, less than a year, of the period during which they were rendered, was more than six years before the commencement of the action. No stated time of pay‑ ment for such services having been agreed upon, the presumption is that they were to be paid for at the end of the year.

Plaintiff rendered services during a number of years for a corporation as an agent and officer thereof, and at various times stated to members of its board of directors that he did not expect compensation for such services, or that he would not claim compensation for them until the affairs of the company were pros‑ perous. *Held*, that he was not legally estopped from setting up such a claim.

Plaintiff having disposed of stock of the defendant company, belonging to himself, for its use and at its request, upon an understanding that he was to receive oth‑ er stock therefor, could not recover the value of it without showing a demand for and refusal of such other stock.　　　　.

APPEAL from the Circuit Court for *Brown* County.

The state having accepted a grant of land from the United States to aid in improving the navigation of the Fox and Wis‑ consin rivers, the governor was authorized by ch. 179, Laws of 1851, to enter into a contract with the plaintiff, *Morgan L. Martin*, to construct certain portions of said improvement, other portions of which had previously been contracted to other parties; and such contract was accordingly entered into on the 17th of May, 1851. By an act approved July 6, 1853,

(Gen. Laws of 1853, ch. 98), the defendant was incorporated, and the property, appurtenances and rights connected with said improvement, then held by the state, were granted and surrendered to the defendant, with a proviso that each member of said company should give a bond to the state, conditioned (among other things) that the company should pay the contractors on said improvement the estimates which should from time to time become due on their contracts, and also any damages which had been or might thereafter be awarded them by decree or judgment of any court of this state or the United States; and with 'a further proviso, that no part of said property, &c., should pass into the possession of the defendant until it should procure from the several contractors releases of all claims and demands which they might have or claim to have against the state, either for work performed under their respective contracts or for damages by reason of any non-fulfillment of such contracts on the part of the state, and should file the same in the office of the secretary of state. The bonds above mentioned were duly executed and ·filed; and on the 15th of July, 1853, the contractors referred to in said act, including the plaintiff, executed a release such as is there described, which was filed on the 20th of the same month; and the defendant thereupon went into possession of the improvement property, &c., under the statute. The first count of the complaint in this action is for damages alleged to have accrued to the plaintiff prior to July, 1853, and for which the state, it is claimed, was liable to him prior to the transfer of its rights and liabilities to the defendant. The second count is for services rendered to the defendant by plaintiff, as its superintendent and agent, between August 1st, 1853, and July 1st, 1856; and for services rendered by him as vice president and acting president of the company between the date last mentioned and October 1st, 1858; and for his travelling expenses while engaged in those capacities in attending to defendant's business. The third count is for the value of 183 shares

of stock of the company, property of the plaintiff, used and appropriated by him for the defendant at its request. The answer, after denying most of the material allegations of the complaint, sets up the statute of limitations as to the first and third causes of action and part of the second. It also sets up counter-claims not necessary to be stated here.

The cause was referred to a referee for trial, who reported a finding of facts similar in substance to the allegations of the complaint, and that there was due the plaintiff on the first cause of action $17,500, on the second $10,333, and on the third $8,235, with interest, making an aggregate of $48,779 ; that the plaintiff was indebted to defendant on one of the counter-claims in the sum of $7,668; that the other counter-claims were not proven ; and that upon the whole action plaintiff was entitled to recover $41,116, with costs.

The defendant's exceptions to the referee's finding of facts and conclusions of law, were overruled ; and the report con-firmed, and judgment rendered accordingly. The defendant appealed from the judgment.

The stipulation as to the bill of exceptions in this cause is sufficiently stated in the opinion.

The evidence bearing on the several causes of action was very voluminous, and the general effect of it, as viewed by this court, being indicated in the opinion sufficiently to explain the points of law decided, a fuller statement of the evidence and record, and the arguments of counsel relative thereto, are omitted.

*John C. Neville, Ellis & Furber* and *B. J. Stevens*, for the appellant.

*S. R. Cotton*, for the respondent.

*By the Court*, COLE, J. It is objected by the respondent that the finding and decision of the court below cannot be reviewed in this court, because the matters of law and fact have not been properly incorporated in and brought to the

record by a bill of exceptions.    The cause was tried before a
referee, who reported to the circuit court the evidence and ex-
ceptions taken before him, together with his findings upon
questions of law and fact arising in the case.    The company—
the defendant below—filed exceptions to the report of the
referee, which were reviewed by the circuit court on the motion
made to set aside the report, and the counter motion to confirm
the same.    The court overruled these exceptions, and ordered
that the report stand in all respects confirmed.    Exceptions
were duly taken and filed to this order.    The attorneys then
saw fit to enter into a stipulation, to the effect that the referee's
report of the evidence and exceptions taken upon the trial before
him ; his findings of fact and law; the exhibits thereto annexed ;
the defendant's exceptions to the findings of fact and law ; the
order to show cause why the report should not be set aside ; the
affidavit and the rulings of the court thereon, and the exceptions
to such ruling, the objection to the confirmation of the report,
the ruling of the court thereon and the exceptions thereto ;
the motion to confirm said report, rulings and exceptions there-
to, should, for the purposes of an appeal, constitute the bill of
exceptions in the case ; and the court entered an order accord-
ing to this stipulation.    So that it will be seen that the parties
and court have specifically agreed upon and determined pre-
cisely what papers shall be deemed to be and shall in fact con-
stitute the bill of exceptions.    This method was resorted to, un-
doubtedly, to save the trouble and necessity of copying all these
various papers, which are very voluminous, and incorporating
them into a bill of exceptions in form.    And these papers have
all been certified to this court with the record in the cause.
The question, therefore, would seem to be, whether it was not
competent for the parties and court to settle a bill of excep-
tions in the manner this was done?    Upon that point there
would seem to be no room for doubt.    It may be that this
practice, if generally adopted, would bring before us a great
deal of irrelevant matter, and that it is one not to be encour-

aged. But still we feel that it is impossible to say that there is no bill of exceptions in the cause.

The first cause of action stated in the complaint is for damages which the respondent alleges that he has sustained in consequence of the non-fulfillment on the part of the state of a certain contract therein specified, which damages, it is claimed, the company assumed and became liable to pay. Now it being conceded, for the purposes of this case, that such a cause of action against the state did in fact once exist, which the company subsequently in some manner became legally liable to pay, the further question then arises, has not the statute of limitations run upon it? It is insisted by the counsel for the company that this cause of action is barred, even if it ever existed, and the objection appears to us insuperable. It is very obvious that if the company ever became liable to pay for any damages growing out of the failure of the state to perform its contract with the respondent, it must have incurred this liability when it was organized under the act of July 6th, 1853 (chap. 98, Laws of 1853, p. 92), and when, by virtue of the provisions of that law, it became the owner of the work known as the "Fox and Wisconsin Improvement," with all the rights and obligations of the state in reference thereto. It is claimed by the respondent that the company, by succeeding to the rights of the state in respect to this improvement in July, 1853, thereby incurred this obligation. But this action was not commenced until the 29th day of March, 1860, after this cause of action was barred by lapse of time. It is, however, contended that there was some subsequent promise or acknowledgment of the debt on the part of the company, which takes it out of the statute. The particular matters relied on to show a subsequent promise or acknowledgment of this debt, are certain resolutions adopted by the board of directors of the company at their meeting July 6th, 1855, and July 12th of the same year. By the former resolution the chief engineer was requested to report to the board his opinion as to the fair

and proper terms on which the contract which the respondent had made with the state for the completion of a portion of the improvement, should be cancelled. And in the other resolution, the vice president and chief engineer were requested to examine the works under contract with the respondent, and to ascertain the terms on which the contract should be cancelled, and in case of disagreement to submit the matter to the board for its action thereon. All this not only fails to show a new promise, but can hardly be said to be an acknowledgment that any liability ever existed on the part of any party to pay the respondent for damages for a breach of the contract. It is certainly insufficient to show the admission of any debt or legal liability on the part of the company for these damages, so as to remove the bar of the statute. And we think it would be contrary to all sound principles to hold that this action of the board, in directing some of its officers to ascertain upon what terms the contract could be cancelled, constituted a new promise, or an acknowledgment of a debt equivalent to such new promise, so as to take the case out of the statute of limitations. It would certainly be in conflict with many adjudged cases, and directly overthrow the the decision of this court in *Pritchard v. Howell*, 1 Wis., 131. We must therefore hold that the first cause of action is barred by the statute, even assuming that it was once a valid claim against the company.

The third cause of action is for one hundred and eighty-three shares of stock belonging to the respondent, but used and appropriated by him for the use and benefit of the company. The proof is very satisfactory that the respondent advanced this amount of stock for the company; but the difficulty we find in affirming the judgment upon this point grows out of the fact that this amount of stock was to be returned to him. Now if he advanced this stock with the understanding that he was to receive a like amount of stock again, then it is very manifest that he cannot recover the value of the stock unless upon demand the company refuse to return it.

Gov. Seymour's testimony is very clear upon this point, and is uncontradicted by any other in the case. And while it shows that the respondent advanced stock for the company, it is equally explicit that he agreed to take stock again. It was therefore indispensable for the respondent to show that he had made demand for this stock, and that the company had refused to deliver it, before he could recover its value. It nowhere appears that he has ever made any such demand, and consequently he cannot recover upon that cause of action.

In the second cause of action, the respondent seeks to recover the value of his services as agent and superintendent of the company while managing its affairs, and his expenses in traveling about its business to various parts of the country. The referee found " that between the first day of August, 1853, and the first day of July, 1856, the plaintiff, at the request of the defendant, acted as the agent and superintendent of the defendant in the care and management of the business of the defendant; and that such services were worth the sum of fifteen hundred dollars per year, and in the whole the sum of four thousand three hundred and seventy-five dollars; and that between the first day of July, 1856, and the first day of October, 1859, the plaintiff, at the request of the defendant, acted as vice president and acting director of the defendant, and was engaged as such in and about the business of the defendant, and that such services were worth the sum of fifteen hundred dollars per year, and in the whole the sum of four thousand eight hundred and twenty-five dollars;" and that from August, 1853, to October, 1859, the respondent was entitled to recover the sum of one thousand and eighty-three dollars and thirty-three cents on account of traveling expenses, over and above the sum of two thousand dollars which had been paid him on that account. This finding of the referee is amply sustained by the evidence in the cause. It is claimed by the counsel for the company that the respondent is estopped by his repeated declarations from insisting upon compen-

sation for his services ; or at all events that he agreed to make no claim of this kind until the affairs of the company were prosperous. There is testimony which tends to show that the respondent stated to various members of the board that he did not expect to be paid for his services, or that the officers were not to be paid until the company was prosperous ; but still there was nothing binding in all this, or which concludes him from claiming compensation. He might undoubtedly render gratuitous services to the company, if he saw fit to do so ; but there is no principle of law or morals which compels him to do it. And that he made any agreement which is legally binding, not to insist upon compensation for services rendered, is not established by the evidence. Nor do we think that any portion of this claim was barred by the statute. At most, the statute could only cut off compensation for services rendered between July 1, 1853, and March 29, 1854. But no stated time for the payment of these services was of course agreed upon, and the presumption is they were to be paid for at the expiration of the year. This would show that this entire cause of action accrued within the six years next preceding the commencement of this suit.

The conclusion at which we have arrived is, that that part of the judgment of the circuit court confirming the report of the referee as to the second cause of action stated in the complaint must be affirmed, while the judgment in other respects is reversed.