*G. W. Miller*, attorney for appellant.

*Thos. Macon, C. S. Thomas*, attorneys for appellee.

---

## STEBBINS *v.* ANTHONY *et al.*

(*Supreme Court of Colorado, December Term, 1880—Error to Probate Court of Jefferson County.*)

DIVORCE. PROBATE COURT HAS JURISDICTION TO GRANT. In suits for divorce, in this country, the jurisdiction of equity tribunals has generally been asserted and maintained in the absence of statutes, as well as under them. The statute of the territory of Colorado conferred upon the probate courts, both common law and chancery jurisdiction, with authority to redress all wrongs affecting person or property, limited only by the provision that the "said probate court shall not have jurisdiction in any matter in controversy where the debt or sum claimed shall exceed the sum of two thousand dollars." Under that statute the probate courts were authorized to hear and determine applications for divorce, having jurisdiction concurrent with the district courts.

TIME—COMPUTATION OF, WHEN A DEFINITE PERIOD IS REQUIRED. The statute requiring the first publication of a summons to be *at least* thirty days before the return day, is met by publication on the 2d day of May, the return day being June 1. Where a statute requires an act to be performed a certain number of days *prior* to a day named, or within a definite period *after* a day specified, the usual rule of computation is to exclude one day of the designated period and include the other. The words "at least," in the statute, do not modify the rule nor the reason for it.

TESTIMONY. PARTIES TO DIVORCE SUIT COMPETENT WITNESSES. Under the statutes of Colorado, the parties to a suit for divorce are competent witnesses. A cause of action which "grows out of personal wrong or injury done by one to the other," is not limited in meaning to merely corporal injuries, as assault, and the like. Decree granting divorce will not be reversed when, upon a review of the whole case, it does not appear that the court below abused its discretion, under the proof.

LACHES IN PROSECUTING WRIT OF ERROR. That the five years allowed had almost expired before the writ of error was sued out, cannot be regarded as favorable to plaintiff in error. Such cases are entitled to receive just such indulgence at the hands of the court, as the strict rules of law require, and no more.

32

BECK, J.   In the month of April, 1874, George I. Stebbins, since deceased, filed in the probate court of Jefferson county his bill of complaint, praying to be divorced from his wife, Aurora Stebbins, the plaintiff in error, and alleging, as grounds therefor, willful desertion, without reasonable cause.

Such proceedings were had, that, in the month of June following, he obtained a decree granting the prayer of his bill.   To reverse this decree, the plaintiff in error, on the 8th day of May, 1879, sued out this writ of error.

A *scire facias* to hear errors issued to Lucy J. Anthony, as administratrix of the estate of George I. Stebbins, deceased, and as claiming to be the widow of said deceased.   After the issuance of the latter writ, the said Lucy J. Anthony died, and the action has been revived against the present defendants in error, Scott J. Anthony and George F. Stebbins, as the only heirs-at-law of Lucy J. Anthony, deceased, the said Scott J. Anthony being also administrator of the estate of said Lucy, and likewise administrator *de bonis non* of the estate of said George I. Stebbins, deceased.

The first assignment of error questions the jurisdiction of the probate court to entertain an action for a divorce.

The point raised and relied upon by counsel for plaintiff in error under this assignment is, that a proceeding for a divorce is not a matter of equitable cognizance, but is purely statutory as to right and remedy, and that jurisdiction over this class of actions had not been specifically conferred by statute upon the court below.

While there are some adjudications to the effect, that an action of divorce is a purely statutory proceeding, we think the weight of authority opposed to this view; and that the jurisdiction of the equity tribunals has generally been asserted and maintained in this country, in the absence of statutes, as well as under them. Where statutes on the subject have been enacted, they usually provide that the chancery practice shall be observed in administering the law; and where divorces have been decreed for causes without the statutes, courts of equity have assumed jurisdiction and afforded relief.

In support of the objection to the jurisdiction in equity, where such jurisdiction is not specifically authorized by statute, it is suggested that in England, during the settlement of this

country, exclusive jurisdiction in matters of divorce vested in the ecclesiastical courts; that chancery courts did not possess this jurisdiction; hence it is argued that, before our chancery courts can take cognizance of causes ecclesiastical, they must have statutory authority.

This doctrine can be conceded only in cases where the grounds or causes alleged may be purely canonical. Our chancery courts would not be authorized to grant divorces for canonical defects or impediments, as impotency, for example, unless it was also made a ground of divorce by statute. But where the grounds for which a separation may be decreed are fixed by statute, as in the present instance, the litigation is necessarily one of equitable cognizance.

The authority of the equity tribunals has also been recognized in cases of marriage void on grounds of *fraud*, *duress* and *lunacy*, in the absence of statutory provisions, by reason of the inherent jurisdiction of equity over these subjects. *Fulton* v. *Fulton*, 36 Miss., 579; *Wightman* v. *Wightman*, 4 Johns. Ch., 343; *Crump* v. *Morgan*, 3 Iredell's Eq., 91; *Ferlan* v. *Gojan*, 1 Hop. Ch., 478; *Clark* v. *Field*, 13 Vt., 460; *Fornshill* v. *Murray*, 1 Bland's Ch., 479, 483; 1 *Bishop on Marriage and Divorce*, Secs. 71–77; 2 *Bishop on Marriage and Divorce*, Sec. 291.

But it is not necessary, in the present case, to maintain that a court having equity powers only, may, in the absence of express authority, take cognizance of suits for divorce. By the amendments to the organic act of March 2, 1863, the probate courts, together with the Supreme and district courts of the territory, were vested with both chancery and common law jurisdiction, and with authority for the redress of all wrongs committed against the laws of the territory, affecting persons or property. Two limitations were imposed by the act; one relating to the several courts named, and the other affecting the probate courts only. The first was, that the jurisdiction of the several courts should be as limited by law; and the other provided that "the said probate court shall not have jurisdiction in any matter in controversy, when the debt or sum claimed shall exceed the sum of two thousand dollars."

The increased jurisdiction conferred by this amendment was extended to the probate court of Arapahoe county, by the legislative act of February 9, 1870, and afterwards the same provis-

ions were extended and made applicable to the probate court of Jefferson county, by the act of Jauuary 31, 1872.

The act provides that, " The probate court of the county of Arapahoe, in this territory, shall hereafter have concurrent jurisdiction with the district courts of this territory in all actions, suits and proceedings whatsoever, as well at law as in equity, when the debt or sum claimed, or the value of property, whether real, personal or mixed, or all or both, or the matter or thing in controversy, shall not exceed the sum of two thousand dollars."

If the effect of this legislation was to make the jurisdiction of the district and probate courts concurrent, in all suits and proceedings at law and in equity, except those suits and proceedings which involved claims or property exceeding in value the sum of two thousand dollars, there is nothing left for construction ; and proceedings for divorce, not complicated with money or property claims exceeding the jurisdiction of the court, are as much within the cognizance of the probate court as of the district court.

If the jurisdiction does not exist, it is not for want of inherent powers in the court to support it, but by reason of the peculiar phraseology employed in the statute to express the legislative will.

If the position were assumed, and could be maintained, that the concurrent jurisdiction conferred by the act, was limited to actions, the *gist* of which were money demands, and suits for the recovery of or concerning property, a very different result might follow.

A careful consideration of the statute, however, leads us to conclude that the aim of the legislature was to give full scope and effect to the common law and chancery powers conferred on this court by the act of Congress, imposing no other or greater restrictions thereon than those contained in the act itself. This result necessarily and conclusively follows from the words of the act, conferring *concurrent*, or joint and equal jurisdiction " in all actions, suits and proceedings whatsoever, as well at law as in equity."

The language of the statute is broad and comprehensive, indicating an intention to include in the concurrent jurisdiction all and every species of actions and proceedings, within the limits imposed, which could be entertained by the district courts. Had such not been the intention, it is only reasonable to suppose that

other limitations would have been imposed, or that language would have been employed which would have clearly confined the jurisdiction to actions concerning money demands and property only.

Proceedings for divorce usually involve money and property rights, and, although ancillary to the main proceeding, yet the value thereof, or the amount claimed as alimony, has been made the test of jurisdiction. Such was the case of *Child* v. *Smith*, 19 Wis., 558, which arose upon a statute very similar to the one under consideration.

The laws of 1860 conferred upon the county court of Milwaukee county, "jurisdiction in all civil actions, both as to matters of law and equity, equal to, and commensurate and concurrent with, the circuit court of Milwaukee county.    *    *    * *Provided*, that the value of the property, or the amount of money in controversy in any action in said county court, exclusive of costs, do not exceed twenty thousand dollars."

An action for divorce being instituted in the court under this statute, the county judge refused to entertain it, basing his refusal upon a want of jurisdiction to try and determine proceedings of that character. Upon *mandamus* to compel the judge to proceed to the trial of the cause, the statute was held to vest the court with jurisdiction; but as the complaint contained no averment of the amount and value of the property involved, the peremptory writ was denied.

Our own county court act, passed since the adoption of the state constitution, contains a clause, that, " In all actions for divorce, the petition or bill of complaint shall aver that the plaintiff does not seek alimony, in excess of the said sum of two thousand dollars." Gen. Laws, 1877, Ch. XXIII, Sec. 2.

Section 1 of this act, defining the jurisdiction of the county court, is certainly not more comprehensive than the corresponding section of the acts of 1870 and 1872. The phraseology is the same, and the language almost *verbatim*; but for the reference to actions for divorce in the second section, the same doubt might arise as to the authority of the present county courts to entertain such causes. This clause only aids the statute by showing the understanding and intention of the framers, for it contains no grant of jurisdiction, but, on the contrary, an express limitation upon the powers already granted.

It should be borne in mind that this same statute, couched in almost the same phraseology, has been repeatedly enacted, and its provisions applied to different probate courts in the late territory, from the year 1864 up to the adoption of the state constitution; and that the present county courts of the state rely upon it for their jurisdiction.

When to these considerations are added the additional facts, that these courts have entertained actions for divorce, and granted decrees therefor, during a long term of years, and that, under these decrees, new rights have sprung up and new relations have been formed, its validity should not be impeached upon technical grounds merely.

Another objection urged against the jurisdiction of the court below is, that the publication of notice to the defendant of the pendency of the action was incomplete, the first publication not having been made *thirty days* before the return day of the summons.

Sec. 8 of the chancery act (R. S., 1868, Ch. XXIII), requires such publication to be made "for four successive weeks, the first of which shall be at least thirty days before the return day of such summons."

The summons in this case was published for four consecutive weeks. The first publication was on May 2nd, 1874, and the last on May 23rd, 1874. The return day of the summons was June 1st. If, therefore, either the day of the first publication, or the return day, which was the first day of the court, may be reckoned in the computation, the service was complete.

The correct rule for computing time, prescribed in statutory enactments, has been a vexed question, both in England and in this country, as is apparent from the conflict of opinion in the reported cases.

The rule of the common law, and the rule generally adopted by the courts of the several states, is to include one day and to exclude the other, some courts including the first day of the specified time in the computation, and excluding the last day. Some courts exclude the first day and include the last; while other courts vary their practice according to the phraseology of the statute under consideration, in some instances including the last day, and, in other cases, excluding both days.

Our entire chancery act, which includes the section now being considered, is almost a literal copy of Ch. XXI of the Revised Statutes of 1845, of the state of Illinois. And while we find no decision of that state construing this particular section, yet similar provisions of other acts, requiring the same interpretation, have been repeatedly construed, and a uniform rule in that state adopted upon this subject.

In the case of the publication of notice, the rule is to exclude the day of publication and to include the first day of the court. In case of personal service, either of process or notice, the day of service is excluded, and the return day, or the day on which the act is to be performed, is included.

In *Varin* v. *Edmonson*, 5 Gilm., 270, the statute of 1833, concerning the publication of notice in case of foreign attachment, was considered. The requirement was, that the clerk should give notice for four weeks successively, in some newspaper published in the state, most convenient to the place where the court was held, etc.

"*Provided*, that, in case of foreign attachment, if sixty days shall not intervene between the first insertion of such notice and the first day of court, then the case shall be continued until the next term of court."

It will be observed that this is substantially the same requirement as that of our chancery act.

The first publication in that case was on the 27th day of May, and the court commenced on the 25th day of July.

Chief Justice Treat, speaking for the court, said: "The proper rule for the computation of time in such case is, to exclude the day on which the notice was first inserted, and include the day on which the term commenced."

This decision was made in 1848, and the same rule of construction was adhered to in the case of *Forsyth* v. *Warren*, 62 Ills., 68, decided in 1871.

In *Bowman* v. *Wood*, 41 Ills., 203, the third and fifth sections of the practice act of that state, involving the same point, were construed. The third section made it the duty of the sheriff, when practicable, to serve all process "ten days before the return day thereof." The fifth section provided that, if it was not served ten days before the return day, it might be executed at any time before or on that day, but, in such case, the defendant would be

entitled to a continuance, and should not be compelled to plead before the next term.   The summons was served September 22nd, returnable October 2nd.   There being no appearance on part of defendant, a default was entered October 4th.   On the next day a motion was made to set aside the default, on the ground that the service was not in time.

Chief Justice Walker, in delivering the opinion of the court, said:  " It is believed that the uniform construction given to the practice act has been to exclude either the day on which the summons was served or the return day, and if there remained ten days, the service is held to be in proper time, and will sustain a judgment by default.   To hold otherwise would be to overturn the practice which has obtained since the organization of the state government, and to overthrow titles under judgments obtained on such service, to an extent that is, perhaps, beyond calculation.   We do not see the slightest reason for a different construction.   The computation in the mode which has obtained is so reasonable and natural, as to require considerable ingenuity to make another seem even plausible."

These several acts, the chancery act, the attachment act, and the practice act, were transcribed from the statutes of Illinois, and incorporated into our statutes as early as 1861.   Not only the provisions concerning the publication and service of process, but the entire chapters on these subjects, are substantially verbal copies of these statutes.  These chapters were incorporated into our revision of 1868, and remained the law of the territory and state of Colorado, until the adoption of the code in 1877.   In adopting the laws of a sister state the general rule is, that the legislature adopts also the settled construction given those laws by the courts of such state, and our legislature is presumed to have done so in these instances.   It is believed, also, that our courts have always given the same construction to these several provisions, and observed the same rule of computation adopted by the courts of Illinois.   Consequently the same reasons exist here as there, for adhering to the precedents.   No distinction was made there, nor the rule of construction varied on account of differences of phraseology in the various acts.   The same rule was applied, whether the requirement was as in the chancery act, (R. S. 1845, Ch. XXI, Sec. 8.) that the first insertion of notice "shall be *at least* sixty days before the return day of such summons," or,

as in the attachment act, (*Ib.*, Ch. IX, Sec. 13,) "if sixty day shall not *intervene* between the first insertion of such notice, and the first term of court, then the cause shall be continued until the next term of court;" or, as in the practice act, (*Ib.*, Ch. LXXXIII, Secs. 3 and 5,) which requires all process to be served "ten days before the return day thereof," and provides that if not so served the defendant shall be entitled to a continuance.

The same general rule obtains in the courts of the states of Maryland, New York, New Jersey, Mississippi, Alabama, Pennsylvania, and in the Supreme Court of the United States. In the three courts last mentioned, the rule appears to be, to treat the day from which the term is to be calculated, that is the first day, as inclusive. *Garner* v. *Johnson*, 22 Ala., 494 ; *Thomas* v. *Afflick*, 16 Pa. St., 14; *Griffith* v. *Bogert*, 18 How., 158–163.

The return day, or first day of court, is included by the courts of Illinois, Mississippi and New York. *Varin* v. *Edmonson*, 5 Glm., 270; *Bowman* v. *Wood*, 41 Ills., 203 ; *Forsyth* v. *Warren*, 62 Ill., 68 ; *Douglas* v. *Cassidy*, 25 Miss., 48; *Columbus Turnpike Co.* v. *Haywood*, 10 Wend., 423.

The courts of Maryland and New Jersey appear to include one day, and exclude the other, without particularly specifying which. *Walsh* v. *Boyle*, 30 Md., 262; *Den* v. *Fen*, 3 Halst., 303; *Day* v. *Hall*, 7 Halst., 204.

It is contended on behalf of plaintiff in error, that our statute must be construed to give *thirty clear days* between the day of the first publication, and the return day of the writ, because the requirement is, that the first publication shall be *at least* thirty days before the return day of the summons.

In support of this position, among other cases, we are cited to the case of *Small* v. *Edrick*, 5 Wend., 138. This case construed a statutory provision, respecting a notice of trial, which was, that " written notice of trial of every issue shall, in all cases, be served *at least* fourteen days before the first day of the court at which such trial is intended to be had."

The court refer to, and admit the general rule of law, that in the computation of time, relating to the service of papers, one day is inclusive and the other exclusive; and say such has been their ruling, but that in this instance a rule of court excludes the day of service, and the statute excludes the first day of court;

33

so that both days must be excluded. No point is made on the words, *at least*, and they are not referred to in the opinion.

This case is distinguished from the case of *Columbus Turnpike Co.* v. *Haywood, supra*, where a different ruling was made, on account of a slight difference in the phraseology of the statutes under which the two cases arose. In case of the Turnpike Co., the statute required a summons in a justice's court to be served "at least six days before the time of appearance." In the former case, the requirement was, that notice of the trial of every issue should be served "at least fourteen days before the first day of court." In the case of the summons in the justice's court, it was held that the return day of the writ was properly included in the computation of the six days; whereas, the return day, or first day of court, was excluded in case of the notice.

An opportunity was afforded the Supreme Court of Pennsylvania to make an equally fine distinction on this point.

In *Thomas* v. *Afflick, supra*, the provision that no writ should be sued out or served on a justice of the peace, until notice in writing, given him "at least thirty days before the suing out or serving the same," it was held that the day on which the notice was served should be included in the computation. The court admitted that the ruling was in conflict with a former decision (*Goswiler's Estate*, 3 Pa., 200), and remarked: "We might plausibly distinguish it from Goswiler's appeal, on the ground of a difference between an act to be done *before* the expiration of so many days, and an act to be done after it; but the distinction would be a shadowy one." The conclusion reached was, that the decision in Goswiler's appeal was not well considered.

*Early* v. *Doe*, 16 How., 615, was the case of a tax sale. The language of the statute in respect to notice was: "That public notice of the time and place of the sale　＊　＊　＊　shall be given hereafter, by advertisement inserted in some newspaper published in said city once in each week, for *at least* twelve successive weeks." The question considered was, whether twelve insertions, in successive weeks, was sufficient notice, without respect to the number of days in twelve weeks, and it was held that the language employed in the statute meant, that the notice must cover eighty-four days. The notice was published twelve times, in twelve successive weeks, the first insertion being on Saturday, August 26th, and the last insertion. November 15th,

the day of sale. The court say that a notice of eighty-two days was given, including both days, and intimate that a sale on the 17th of November, instead of the 15th, would have been valid.

It will be seen, however, that if the day of the first insertion be excluded and that of the last included, the notice covered but eighty-one days. By the usual rule of computation, the sale should have been made on the 18th of November.

The rule laid down by the same court in *Griffith* v. *Bogert*, 18 How., 158, and which it mentions as "the general rule and popular usage," is to treat the day from which the term is to be calculated, or *terminus a quo*, as inclusive.

The opinion in *Fairbanks* v. *Wood*, 17 Wend., 329, does not conflict upon this point with the rule adopted in 10 Wend., 423, but cites the latter as authority.

The point decided in *Walsh* v. *Doyle*, 30 Md., 262, was what constituted one day's notice. It was the construction of an order of court, which allowed each party to take testimony upon giving *one day's notice*. Notice had been served on the 28th of December and the testimony taken on the 29th. The court held the notice sufficient, and properly so held, as it was one day exclusive and one inclusive.

In discussing the question, the court cite the case of *King* v. *Justices*, 3 Barn. & Ald., 581, as authority for the rule, that when a statute or rule of court requires notice to be given of a certain *number of clear days*, both the day on which the notice is served and the day of the proceeding must be excluded. It also referred to the case of *The Queen* v. *The Justices*, 8 Adol. & Ellis, 173, where it was held that a statute requiring fourteen days *at least* means fourteen clear days. But as *Walsh* v. *Doyle* involved no such points as these, it cannot be regarded as an authority for these propositions or rules.

The cases of *Beemis* v. *Leonard*, 118 Mass., 502; *Sheets* v. *Selden*, 2 Wallace, 190, and *Good* v. *Webb*, 52 Ala., 452, do not appear to be in conflict with what we understand to be the general current of modern authority upon this question, which is, that where a statute requires an act to be performed a certain number of days *prior* to a day named, or within a definite period after a day or event specified, or where time is to be computed either prior to a day named or subsequent to a day named, the usual

rule of computation is to exclude one day of the designated period and to include the other.

The point raised, that the words "*at least*," prefixed to the number of days specified in a statute, have the effect to require *full, clear days*, is not sustained by the weight of authority.

An examination of the cases cited discloses the fact that many of them involve the construction of statutes which include these words, and that such statutes have been interpreted as if the words had been omitted. And in the case of *The Queen* v. *The Justices*, 8 Adol. & Ellis, 173, where it was held that fourteen days at least mean fourteen clear days, the ruling appears to have been regretted by the judges who made it—Littledale, J., saying, "We abide by what has already been decided, though it appears to me that a day is a day, whether '*at least*' be added or left out." Coleridge, J., concurred in the decision, adding, " But, on principle, I should be of a different opinion."

The courts of Georgia, Texas, some of the New York cases, several English decisions, and possibly other cases, conflict with the rule which we adopt, but we think it sufficiently supported by authority, and that it is correct on principle.

The first publication, therefore, was in time, and the service was complete.

The objections to the sufficiency of the proof of the charges contained in the bill, are based upon two propositions: First, that the complainant was not a competent witness in the cause; second, that if competent, he did not testify to facts showing such desertion, by the plaintiff in error, as warranted the decree of divorce.

The first proposition requires a construction of Secs. 1 and 5, of the act of February 11, 1870, entitled, "An act relating to the competency of witnesses in civil cases."

Sec. 1 provides: " That no person shall be disqualified as a witness in any civil action, suit or proceeding, except as hereinafter stated, by reason of his or her interest in the event thereof, as a party or otherwise, or by reason of his or her conviction of any crime, but such interest or conviction may be shown for the purpose of affecting the credibility of such witness," etc.

Sec. 5 provides: " That no husband or wife shall, by virtue of section one of this act, be rendered competent to testify for or against each other, as to any transaction or conversation

occurring during the marriage, whether called as a witness during the existence of the marriage, or after its dissolution, except in cases where the wife would, if unmarried, be plaintiff or defendant, or where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the neglect of the husband to furnish the wife with a suitable support; and except, also, in cases where the litigation shall be concerning the separate property of the wife, in all of which cases the husband and wife may testify for and against each other in the same manner as other parties may under the provisions of this act."

On behalf of plaintiff in error it is contended that, so far as the present action is concerned, our statute does not change the common law in respect to the competency of husbands and wives as witnesses for and against each other.

The first section is substantially the same as Sec. 1 of Wagner's Statutes of Mo., p. 1372, which was construed to render husband and wife competent witnesses, when they are the opposing parties to a suit, to give evidence of matters not communicated by one to the other; such communications being excluded by other provisions of the statute on grounds of public policy.

In construing this section, the court say, in *Moore* v. *Moore*, 51 Mo., 118: "The language used is broad enough to embrace all persons who are parties to a suit, including husband and wife." This opinion was affirmed in *Berlin* v. *Berlin*, 52 Mo., 151, wherein the following views were expressed in respect to the legal effect and design of this section: "It is true that husband and wife, *eo nomine*, are not mentioned in section one of the act respecting witnesses; but it would seem that a fair and reasonable construction would embrace them within its provisions. The act in question was evidently designed to work a complete change in the law of evidence, and to lay its foundations anew, not on the theory of the common law, that of ' human infirmity,' but on the ' sanction of truth, probity and personal honor.'" These rulings were afterwards cited with approval in the cases of *Paul* v. *Leavitt*, 53 Mo., 595, and *Darrier* v. *Darrier*, 58 Mo., 222.

We have been referred by counsel for plantiff in error to several decisions which announce a contrary doctrine, but only one of them appears to be founded upon statutory provisions in any wise similar to either our own statute or that of Missouri.

The case of *Gee* v. *Scott*, 48 Texas, 510, holds that the act of May 10, 1871, of that state, declaring that in the courts of the state there shall be no exclusion of any witness in civil actions because he or she may be a party to, or interested in, the issue to be tried, does not render the husband and wife competent as witnesses for or against each other.

The argument of the court is, that such testimony was excluded at common law on the ground of public policy, as well as upon the ground of interest, and that the statute is not broad enough to remove the disability grounded upon consideration of public policy, in the case of husband and wife.

This, however, was not an action between husband and wife as adverse parties, but a trial of the right of property in certain goods claimed by the wife as plaintiff against a stranger—the husband being offered as a witness on behalf of the wife.

The case is, therefore, not clearly in point, for, in the construction of the Missouri statute, it was held, on the ground of public policy also, that husband and wife were incompetent to testify for or against each other where they were not the opposing parties in an action, except in certain cases specified in the statute; and that, as to all other cases, the common law rules of evidence prevailed. See *Moore* v. *Moore, supra.*

In the case of our statute, there is less room for construction than in either of the acts referred to. The question whether the principal section, declaring who shall be competent witnesses in a cause, was designed to include husband and wife, has not been left entirely open for judicial interpretation. The legislature has placed its own construction upon this section, by the enactment of Sec. 5 of the same act. The latter section not only informs us that such persons were included, but proceeds to limit the rights and privileges therein granted to husband and wife, to specified classes of cases, among which is enumerated the class now under consideration, viz.: "Where the cause of action grows out of a personal wrong or injury done by one to the other."

The suggestion of counsel, that desertion is not a personal wrong or injury within the meaning of the act, and that only corporal injuries, as assaults, were contemplated, will not bear discussion. It is difficult to conceive of a more grievous personal wrong, capable of being committed by one of the parties

to this sacred compact against the other, than an act which is wholly destructive of the aims and purposes of the marriage relation. Such an act is wilful desertion, without reasonable cause. That it was the design of the legislature to effect a radical change in the common law rules of evidence in respect to such cases as this, is clear, and it therefore becomes our duty to give effect to the law.

In respect to the testimony in this case, it certainly deserves the caustic criticism given it by the able counsel for plaintiff in error. In an action of this character, and especially in case of a default, it is the duty of the court trying the cause to make careful inquiry into all the facts and circumstances connected with the subject matter of the complaint, and, before granting the relief prayed for, clear and satisfactory proof should be required of the charges made in the bill.

But while the proof is somewhat meagre, we cannot say, upon a review of the whole case, that it is insufficient to support the decree, or that the court below abused its discretion in pronouncing the decree of divorce.

The parties had been married nineteen years and a half at the time of the filing of the bill, and the desertion charged had, at that date, been persisted in for thirteen years. The testimony of the husband is, that for this length of time the plaintiff in error had absented herself from his habitation, and still persisted in such conduct. He testified that he had always been kind and affectionate towards her, and provided her with all the necessaries and comforts of life, but that she had, for that length of time, wilfully, and without reasonable cause, refused to live with him. He swore that he frequently requested her to return, and sent her money, but she refused to do so. The intimation of counsel that this testimony may be untrue, and that there may have been just cause for the desertion complained of, cannot avail; there are no such intimations in the record.

Nor can we regard the delay in prosecuting this writ as favorable to the cause of plaintiff in error. The five years allowed for prosecuting such writ had almost elapsed when the writ was sued out. In the meantime, the plaintiff below had contracted another marriage, and was then in his grave, as was also the wife of that marriage, before service of said writ.

Such cases are entitled to receive just such indulgence at the hands of courts as the strict rules of law require, and no more. We are unable to perceive from this record that the law has been violated to the injury of the plaintiff in error, and must therefore affirm the decree.

*Decree affirmed.*

CHIEF JUSTICE ELBERT, being absent, did not participate in this decision.

*J. Q. Charles* and *E. L. Johnson*, for defendant in error.
*Thos. George*, for plaintiff in error.